1

JS-6

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11 In re PHILIP E. KOEBEL,

No.    CV 15-1222 PA

12        Debtor,

OPINION ON APPEAL FROM
BANKRUPTCY COURT

13 Philip E. Koebel,

14        Appellant,

Bankruptcy Case No. 2:12-bk-12597-WB
Adversary Proceeding No. 2:14-ap-1046-WB

15        v.

16 Federal Home Loan Mortgage
Corporation, Ocwen Loan Servicing
LLC, Nationstar Mortgage LLC,

17

18        Appellees.

19

20        Before the Court is an appeal filed by Philip E. Koebel ("Koebel").  In the course of

21 his Chapter 13 bankruptcy, Koebel initiated an adversary proceeding against Federal Home

22 Loan Mortgage Corporation ("Freddie Mac"), Ocwen Loan Servicing LLC ("Ocwen"), and

23 Nationstar Mortgage LLC ("Nationstar") (collectively, "Appellees").  Koebel now

24 challenges the decision by the United States Bankruptcy Court for the Central District of

25 California to dismiss, without leave to amend, the Complaint and First Amended Complaint

26 in the adversary proceeding, as well as the decision to deny his Motion for Reconsideration

27 of those rulings.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule

28 7-15, the Court finds that this matter is appropriate for decision without oral argument.

## I.    **Background**

On June 23, 2008, Koebel executed and delivered a promissory note for $360,000 to Taylor, Bean & Whitaker Mortgage Corporation ("TBW").  (Excerpt of Records ("ER") 8:758-60.)  As security for the note, Koebel also executed a deed of trust against his property at 255 Robinson Road, Pasadena, California (the "Property"), naming Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary solely as a nominee for TBW and its successors and assigns.  (ER 4:281-94.)  On October 27, 2011, the deed of trust was assigned to Ocwen.  (ER 4:299-301.)  Subsequently, on May 16, 2013, the deed of trust was assigned to Nationstar.  (ER 4:374-75.)

In early 2009, Koebel applied for a loan modification from TBW.  (Appellant's Opening Brief ("AOB"), 20.)  When no modification agreement was reached, Koebel defaulted on his loan and a notice of default was recorded on June 1, 2009.  (ER 4:296.)  Koebel continued to negotiate a loan modification with Ocwen, the servicer of the loan at the time.  (AOB, 20.)  Koebel believed that after a series of trial payments he had entered into a permanent loan modification beginning December 1, 2010.  (Id.)  However, on May 9, 2011, a foreclosure sale of the Property took place.  (ER 4:313.)

On May 23, 2011, Koebel filed a complaint in Los Angeles Superior Court Case No. GC047411 (the "State Court Action"), asserting nine causes of action for: (1) Declaratory Relief; (2) Wrongful Foreclosure; (3) Fraud; (4) Unjust Enrichment; (5) Violation of California Business and Professions Code Section 17200 et seq.; (6) Recession; (7) Quiet Title; (8) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (9) Negligence.  (ER 4:310.)  The complaint sought to unwind the foreclosure sale that occurred on May 9, 2011.  (ER 4:313.)  Koebel contended that the foreclosure sale should not have occurred because he had successfully entered into a loan modification, and because Ocwen had instructed the trustee to cancel the foreclosure sale following the successful modification.  (Id.)  In response, Ocwen demurrered to Koebel's complaint.  (Appellee's Excerpt of Records ("AER") 1:2-23.)  The demurrer was sustained with leave to amend, but

1  Koebel failed to file an amended complaint within the allotted time.  (AER 2:24-25.)  As a

2  result, the State Court Action was dismissed with prejudice.  (Id.)

3        After the State Court Action was dismissed with prejudice, Koebel filed an action in

4  the United States District Court for the Central District of California, under the name Koebel

5  v. MTC Financial Inc., et al., No. 8:11-cv-01978-AG (ANx).[1]  In that proceeding, Koebel

6  sought a Temporary Restraining Order ("TRO") to prevent a foreclosure sale of the

7  Property.  Although the TRO was granted, a subsequent hearing revealed that Koebel had

8  lied under oath in both his verified complaint and in a declaration filed in support of the

9  TRO.  Quickly thereafter, Koebel filed a voluntary dismissal of the case.  Despite Koebel's

10  voluntary dismissal, the District Court issued terminating sanctions and referred the matter

11  to the United States Attorney's Office for prosecution.[2]

12        On January 25, 2012, Koebel filed the Chapter 13 bankruptcy proceeding which

13  serves as the basis for this appeal.  (ER 9:766.)  Before a Chapter 13 Plan was confirmed,

14  Ocwen filed a proof of claim ("Claim 8-1") asserting a secured interest in the Property.  (ER

15  8:737.)  Koebel filed a motion for disallowance of Claim 8-1.  (AER 3:26-42.)  On June 26,

16  2013, as part of the discovery related to Claim 8-1, Appellees produced Koebel's uniform

17  residential loan application, which Koebel averred contained a forgery of his signature and

18  falsified occupation information (the "Forged Application").  (AOB, 21.)  On April 25,

19  2014, the Bankruptcy Court denied Koebel's motion for disallowance on the basis that the

20  State Court Action acted as res judicata for Claim 8-1.  (ER 5:406.)

21        Prior to the Bankruptcy Court's decision on Claim 8-1, Koebel initiated an adversary

22  proceeding which, on the basis of the Forged Application, asserted four claims styled as:

23

24  [1]  The Court takes judicial notice of the June 14, 2012 Minute Order Denying Motion

25  for Preliminary Injunction, Docket No. 49, filed in Koebel v. MTC Financial Inc., et al, No. 8:11-cv-01978-AG (ANx).  See Fed. R. Evid. 201; Reyn's Pasta Bella, LLC v. Visa USA,

26  Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

27  [2]  The Bankruptcy Court did not afford any preclusive effect to the terminating

28  sanctions imposed in the District Court action, and on appeal Appellees have not relied on it for purposes of res judicata.  (See ER 6:436; Appellee's Brief, 3 n. 4.)

1  (1) Disallow Mortgage Claim as Void Ab Initio Due to Fraud and/or Criminal Scheme; (2)

2  Avoid Mortgage Claim as Actually Fraudulent Obligation; (3) Deem Mortgage Claim

3  Unsecured and Disallow or Subordinate; and (4) Bifurcate Mortgage Claim.  (ER 7:692.)

4  As relief, Koebel sought a determination that the mortgage claim was void due to fraud, that

5  any amount owed under the mortgage was unsecured or disallowed in its entirety, and to

6  quiet title in the Property.  (ER 7:706.)   Appellees filed a motion to dismiss, which was

7  granted by the Bankruptcy Court on April 23, 2014.  (ER 6:419-21.)  The Bankruptcy Court

8  dismissed the first, second, and fourth causes of action with prejudice, but granted leave to

9  amend as to the third cause of action.  (Id.)  Koebel subsequently filed a First Amended

10  Complaint ("FAC"), against which Appellees filed a motion to dismiss.  (ER 5:390-403.)

11  The Bankruptcy Court granted the motion to dismiss, this time without leave to amend. (ER

12  3:202-03.)  Koebel filed a motion for reconsideration of these rulings, which the Bankruptcy

13  Court denied.  (ER 1:80-99; ER 1:55-56.)  Koebel now appeals the Bankruptcy Court's

14  orders granting the motions to dismiss, denying leave to amend, and denying the motion for

15  reconsideration.

16  **II.   Jurisdiction**

17      This Court possesses appellate jurisdiction over a Bankruptcy Court's final orders

18  dismissing a complaint without leave to amend, and denying a motion for reconsideration.

19  28 U.S.C. § 158(a); In re Belice, 461 B.R. 564, 571 (B.A.P. 9th Cir. 2011).

20  **III.   Standard of Review**

21      The Bankruptcy Court's legal conclusions are reviewed de novo, while factual

22  findings are reviewed for clear error.  Greene v. Savage, 583 F.3d 614, 618 (9th Cir. 2009).

23  "A court's factual determination is clearly erroneous if it is illogical, implausible, or without

24  support in the record."  In re Retz, 606 F.3d 1189, 1196 (9th Cir. 2010).

25      As such, this Court reviews an order dismissing a complaint under Federal Rule of

26  Civil Procedure 12(b)(6) de novo.  See In re JMC Telecom LLC, 416 B.R. 738, 741 (C.D.

27  Cal. 2009).  Decisions to deny leave to amend are reviewed under an abuse of discretion

28  standard.  Leadsinger, Inc. v. BMG Music Pub'g, 512 F.3d 522, 532 (9th Cir. 2008).  The

-4-

1   denial of a motion for reconsideration is also reviewed for an abuse of discretion.  Sch. Dist.

2   No. 1J, Multnomah Cnty., Or. v. ACandS, Inc., 5 F.3d 1255, 1262 (9th Cir. 1993).   An

3   abuse of discretion occurs when a court "misapprehend[s] the law with respect to the

4   underlying issues in the litigation," or "rests its conclusions on clearly erroneous findings of

5   fact."  Chalk v. United States Dist. Court, 840 F.2d 701, 704 (9th Cir. 1988).

6          The Bankruptcy Court's decision may be affirmed on any ground finding support in

7   the record.  In re Frontier Properties, Inc., 979 F.2d 1358, 1364 (9th Cir. 1992).

8   **IV.    Discussion**

9          Koebel contends that the Bankruptcy Court improperly dismissed the Complaint and

10  First Amended Complaint in the adversary proceeding because the State Court Action did

11  not act as res judicata for the asserted claims.  However, as explained below, the Bankruptcy

12  Court did not err because both the State Court Action and the Bankruptcy Court's ruling on

13  Claim 8-1 precluded the claims asserted in the adversary proceeding.  Additionally, the

14  Bankruptcy Court correctly concluded that Koebel's claims were barred by the three year

15  statute of limitations for claims sounding in fraud.

16          **A.    The State Court Action**

17          In determining the preclusive effect of a state court judgment, federal courts follow

18  the state's rules of preclusion.  Kremer v. Chem. Constr. Corp., 456 U.S. 461, 481-82, 102

19  S. Ct. 1883, 1898, 72 L. Ed. 2d 262 (1982).  A federal court "must give to a state-court

20  judgment the same preclusive effect as would be given that judgment under the law of the

21  State in which the judgment was rendered."  Migra v. Warren City Sch. Dist. Bd. of Ed., 465

22  U.S. 75, 81, 104 S. Ct. 892, 896, 79 L. Ed. 2d 56 (1984); White v. City of Pasadena, 671

23  F.3d 918, 926 (9th Cir. 2012).  "The preclusive effect of a judgment is defined by claim

24  preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"  Taylor

25  v. Sturgell, 553 U.S. 880, 892, 128 S. Ct. 2161, 2171, 171 L. Ed. 2d 155 (2008).

26          Under California's claim preclusion doctrine, "'a valid, final judgment on the merits

27  precludes parties or their privies from relitigating the same 'cause of action' in a subsequent

28  suit.'"  San Diego Police Officers' Ass'n v. San Diego City Emps. Ret. Sys., 568 F.3d 725,

1  734 (9th Cir. 2009) (quoting <u>Le Parc Cmty. Ass'n v. Workers' Comp. Appeals Bd.</u>, 2 Cal.

2  Rptr.3d 408, 415 (2003)).  "Thus three requirements have to be met:  (1) the second lawsuit

3  must involve the same 'cause of action' as the first one, (2) there must have been a final

4  judgment on the merits in the first lawsuit and (3) the party to be precluded must itself have

5  been a party, or in privity with a party, to that first lawsuit."  <u>Id.</u>

6      However, "the res judicata effect of a judgment of dismissal . . . after the sustaining

7  of a demurrer is of limited scope."  <u>Wells v. Marina City Properties, Inc.</u>, 632 P.2d 217, 221

8  (Cal. 1981).  The judgment is only "on the merits to the extent that it adjudicates that the

9  facts alleged do not constitute a cause of action . . . . If, on the other hand, new or additional

10  facts are alleged that cure the defects in the original pleading, it is settled that the former

11  judgment is not a bar to the subsequent action whether or not plaintiff had an opportunity to

12  amend his complaint."  <u>Id.</u> (citing <u>Keidatz v. Albany</u>, 249 P.2d 264, 265 (Cal. 1952)).

13              **1.    Same Cause of Action**

14      In California, "a final judgment precludes further proceedings if they are based on the

15  same cause of action."  Maldonado v. Harris, 370 F.3d 945, 952 (9th Cir. 2004); Mycogen

16  Corp. v. Monsanto Co., 51 P.3d 297, 301-02 (Cal. 2002).  California law defines a "cause of

17  action" for purposes of the res judicata doctrine by analyzing the primary right at stake.

18  <u>Mycogen</u>, 51 P.3d at 306-07.  "That concept 'is indivisible:  the violation of a single primary

19  right gives rise to but a single cause of action.'"  <u>San Diego Police Officers' Ass'n v. San</u>

20  <u>Diego City Emps. Ret. Sys.</u>, 568 F.3d 725, 734 (2009) (quoting <u>Crowley v. Katleman</u>, 881

21  P.2d 1083, 1090 (Cal. 1994)).  That is, "if two actions involve the same injury to the plaintiff

22  and the same wrong by the defendant then the same primary right is at stake even if in the

23  second suit the plaintiff pleads different theories of recovery, seeks different forms of relief

24  and/or adds new facts supporting recovery."  <u>Id.</u> (quoting <u>Eichman v. Fotomat Corp.</u>, 197

25  Cal. Rptr. 612, 614 (1983)).  In determining which primary rights are implicated, "[w]hat is

26  critical to the analysis 'is the harm suffered; that the same facts are involved in both suits is

27  not conclusive.'"  <u>Id.</u> (quoting <u>Agarwal v. Johnson</u>, 603 P.2d 58, 72 (Cal. 1979)).

28

-6-

In the State Court Action, Koebel's complaint contended that a successful loan modification prevented a foreclosure sale of the Property, and accordingly sought to quiet title and prevent a wrongful foreclosure.  (See ER 4:313.)  Thus, Koebel sought to protect the primary rights of freedom from wrongful foreclosure and to clear title in the Property. See People v. Superior Court of Los Angeles Cty., 234 Cal. App. 4th 1360, 1377, 184 Cal. Rptr. 3d 809, 821 (2015) (citing Beronio v. Ventura Cty. Lumber Co., 61 P. 958 (Cal. 1900)).

In the adversary proceeding, both the Complaint and the FAC sought to void or otherwise nullify Koebel's obligations under his mortgage for the Property, as well as a declaration that Koebel "holds quiet title to the subject real property."  (ER 7:706, 5:402.) Although the adversary proceeding asserted new legal theories under which Koebel could void the mortgage and have clear title in the Property, it sought to protect the same primary rights from the same injury as in the State Court Action.  Because California follows the primary rights approach, "[e]ven when multiple legal theories for recovery exist, one injury gives rise to only one claim for relief."  Eichman, 759 F.2d at 1438 (citing Slater v. Blackwood, 543 P.2d 593, 594-95 (Cal. 1975)).  Other than alternate legal theories, Koebel fails to identify any new injuries or primary rights which were part of the adversary proceeding but were not also part of the State Court Action.[3/]

Although Koebel raises a plethora of colorful theories under which to avoid the obligations of his mortgage, his briefing largely fails to address the issue of res judicata until its fifty-seventh page.  There, Koebel explains that he now "realizes that he would have been wiser to formally dismiss the irrelevant state court action instead of allowing it to be dismissed with prejudice, but only claims related to dual tracking were included in the state court complaint and thus only those dual tracking claims are precluded."  (AOB, 58.) Therefore, Koebel concedes that the State Court Action serves, at least partially, as res

---

[3/]    Indeed, Koebel admits that his note-splitting theory of the case, which seeks to void the mortgage, is in fact an "alternate theory in the original Complaint and the First Amended Complaint."  (AOB, 34.)

1    judicata for his bankruptcy proceeding.  His error, however, is in construing the scope of the

2    preclusive effect as being limited to the dual tracking of the loan modification.  The State

3    Court Action precludes relitigation of any primary right implicated by the claims in the State

4    Court Action, including the claims for quiet title and wrongful foreclosure.  Accordingly,

5    because the adversary proceeding and the State Court Action each alleged the same injuries

6    to the same primary rights, they were based on the same "cause of action" for purposes of

7    res judicata.

8                       **2.      Final Judgment on the Merits**

9              The State Court Action ended in a final judgment after a demurrer was sustained with

10    leave to amend and Koebel proffered no amendment.  "A judgment upon the facts pleaded

11    and confessed by demurrer is no less effectual as a bar to the subsequent action than a

12    judgment based upon a verdict."  Morrison v. Willhoit, 145 P.2d 707, 711 (Cal. 1944).

13    Therefore, the judgment in the State Court Action qualifies as a final judgment on the

14    merits.

15                       **3.      Same Party or Those in Privity**

16              Privity exists when there is a "mutual or successive relationship to the same rights of

17    property, or to such an identification in interest of one person with another as to represent

18    the same legal rights." Clemmer v. Hartford Ins. Co., 587 P.2d 1098, 1102 (Cal. 1978).

19    Ocwen is the only appellee which was a party to both the State Court Action and the

20    bankruptcy proceeding.  Therefore, for the preclusive effect of the State Court Action to

21    extend to Nationstar and Freddie Mac, they must be found to be in privity with Ocwen.

22    During the State Court Action, Ocwen was the servicer of Koebel's loan.  (ER 4:311.)

23    Nationstar is the successor servicer of Koebel's loan, and the assignee of Claim 8-1. (ER

24    7:696-97.)  Freddie Mac is the successor-in-interest to the original lender, TBW.  (Id.)

25    These relationships are sufficient to find that Nationstar and Freddie Mac are in privity with

26    Ocwen because they have a mutual or successive relationship to the same rights in the

27    Property.  See Zaragosa v. Craven, 202 P.2d 73, 75 (Cal. 1949) ("The term 'privity' denotes

28    mutual or successive relationship to the same rights or property."); see also Caballero v.

                                                    -8-

Doan, No. 13-CV-05756-BLF, 2014 WL 3950899, at *6 (N.D. Cal. Aug. 11, 2014) (holding that a loan servicer and the holder of the deed of trust are in privity for purposes of res judicata).

### 4.   Koebel Has Not Identified Any New Facts Curing His Pleading Defects

Because the State Court Action acted as res judicata for the claims asserted in the adversary proceeding, Koebel's only recourse was to plead new or additional facts which would bring his bankruptcy proceeding outside of the State Court Action's preclusive effect. See Wells, 632 P.2d at 221.  The only allegedly new facts pleaded by Koebel were that: (1) TBW committed fraud by altering information related to Koebel's credit worthiness in the Forged Application; (2) neither TBW nor MERS could have conveyed the deed of trust to Ocwen because the assignment would have occurred after TBW went bankrupt, and therefore Ocwen could not have validly assigned its interest to Nationstar; and (3) Nationstar's objection to the confirmation of the Chapter 13 Plan revealed that it, rather than Freddie Mac, held the note.  (AOB, 36-37, 41-44.)  However, none of these facts cure the deficiencies in the State Court Action.

The primary basis for the complaint in the adversary proceeding, and the fact most heavily relied on in Koebel's oppositions to Appellee's two motions to dismiss, was the Forged Application.[4]  (See ER 6:455-459.)  Although the Forged Application is a new fact which was not part of the State Court Action, it is not a new fact which would have cured Koebel's pleading defects.  Koebel has failed to show how the Forged Application harmed him, or how any fraud was perpetrated against him such that his obligations under the mortgage should be voided.  Any false representations made by TBW regarding Koebel's credit-worthiness were made to, and subsequently only could have harmed, Freddie Mac, the

---

[4]   Specifically, Koebel contended that the "Forged Application transformed the character of the mortgage from a bad deal stupidly executed by the witless Plaintiff into a tool of illegality used in a criminal enterprise that could not, by law, be valid consideration for any contract or a legal purpose for the contract."  (ER 6:456.)

purchaser of his loan.  As such, Koebel failed to plead facts which stated a claim for fraud.

See Small v. Fritz Companies, Inc., 65 P.3d 1255, 1258 (Cal. 2003).  It follows that these

allegations, which were defective in and of themselves, could not have cured the pleading

defects in the State Court Action.  Instead, the Forged Application and the associated claims

to void the mortgage are simply another alternate legal theory asserted to avoid foreclosure

of the Property.  As such, Koebel failed to allege new facts which could satisfy the Wells

standard, and the adversary proceeding continued to be barred under the doctrine of res

judicata.

Koebel's other "new facts," pleaded for the first time in his motion for

reconsideration, were that Ocwen had not validly obtained its interest to the deed of trust and

that Nationstar had claimed that it, rather than Freddie Mac, was the Note holder.  (See ER

1:86-87.)  Because these facts were raised for the first time in a motion for reconsideration,

Koebel bore the additional burden of explaining why these facts could not have been

previously discovered through due diligence.  Carroll v. Nakatani, 342 F.3d 934, 945 (9th

Cir. 2003) (noting that a motion for reconsideration "may not be used to raise arguments or

present evidence for the first time when they could reasonably have been raised earlier in the

litigation").  The Bankruptcy Court denied the motion for reconsideration because Koebel

failed to establish that the evidence could not have been discovered through due diligence or

was of such magnitude that earlier production would have been likely to change the

disposition of the case.  (ER 1:65.)  This was the proper conclusion because Koebel's own

pleadings revealed that these facts were discoverable as of August 10, 2011.  (ER 1:93.)

Additionally, Nationstar's claim regarding holding the note was corrected through a notice of

errata.  (ER 1:70-71.)  Accordingly, the Bankruptcy Court properly concluded that these new

facts failed to bring the adversary proceeding outside of the scope of the preclusive effect of

the State Court Action.

**B.     Claim 8-1**

The Bankruptcy Court denied Koebel's motion to disallow Claim 8-1 on April 25,

2014, and entered its rulings on the motions to dismiss the Complaint and First Amended

1    Complaint in the adversary proceeding on May 7, 2014, and August 11, 2014.  In the motion

2    to disallow Claim 8-1, Koebel once again argued that he had successfully entered into a loan

3    modification agreement which precluded foreclosure of the Property.  As a result, the

4    Bankruptcy Court denied the motion on the basis of res judicata.  Koebel initiated an appeal

5    of the Bankruptcy Court's ruling on Claim 8-1, but the appeal was dismissed for a lack of

6    prosecution.

7         Appellees contend that the Bankruptcy Court's rulings on Claim 8-1 preclude

8    Koebel's claims in the adversary proceeding.  "The law of the case principle is analogous to,

9    but less absolute a bar than, res judicata."  Moore v. James H. Matthews & Co., 682 F.2d

10   830, 833 (9th Cir. 1982).  Under the law of the case doctrine, "a court is generally precluded

11   from reconsidering an issue previously decided by the same court, or a higher court in the

12   identical case.  For the doctrine to apply, the issue in question must have been decided

13   explicitly or by necessary implication in [the] previous disposition."  Milgard Tempering,

14   Inc. v. Selas Corp. of Am., 902 F.2d 703, 715 (9th Cir. 1990) (internal citation and quotation

15   omitted; alteration in original).  "A court properly exercises its discretion to reconsider an

16   issue previously decided in only three instances: (1) the first decision was clearly erroneous

17   and would result in manifest injustice; (2) an intervening change in the law has occurred; or

18   (3) the evidence on remand was substantially different."  Id.

19        The primary relief sought in the adversary proceeding was a finding that any amount

20   owed under the mortgage was unsecured or disallowed in its entirety.  (ER 5:401-402.)  In

21   denying the motion for disallowance of Claim 8-1, the Bankruptcy Court explicitly decided

22   that the State Court Action was res judicata for any assertion of a loan modification

23   agreement, and concluded that Appellees could validly pursue state law remedies to collect

24   the unpaid sum owed under the note and deed of trust.  Between the Bankruptcy Court's

25   ruling on the motion to disallow Claim 8-1 and its rulings on the motions to dismiss, Koebel

26   did not provide any facts or advance any arguments that would have justified

27   reconsideration of those determinations.  Similarly here, Koebel, who did not file a reply

28   brief in this appeal, has advanced no arguments as to why Claim 8-1 did not establish the

1   law of the case.  Accordingly, the Court concludes that the Bankruptcy Court's ruling on

2   Claim 8-1 established the law of the case and was thus another reason why the claims in the

3   adversary proceeding were precluded.

4           **C.       Statute of Limitations**

5           The claims asserted in the adversary proceeding, which were largely based on the

6   Forged Application, all sound in fraud.  The statute of limitations for an action grounded in

7   fraud is three years.  Cal. Civ. Proc. Code § 338(d).  Here, the note and deed of trust for the

8   Property were executed on June 23, 2008, and the bankruptcy proceeding was initiated more

9   than three years later, on January 25, 2012.  The Bankruptcy Court applied the three year

10  statute of limitations for claims sounding in fraud and concluded that Koebel's claims were

11  time-barred.  (ER 6:434.)  Koebel contends that the proper statute of limitations was four

12  years under California Code of Civil Procedure § 337(1) or, in the alternative, that the

13  statute of limitations should not have begun to run until his discovery of the Forged

14  Application.  Neither contention is correct.

15          California Code of Civil Procedure § 337(1) provides a four year statute of

16  limitations for actions based on a written instrument.  However, where a borrower asserts

17  fraud related to a mortgage, courts have consistently applied the three year statute of

18  limitations for claims sounding in fraud rather than the four year statute of limitations for

19  claims based on a written instrument.  E.g., Zadrozny v. Bank of New York Mellon, 720

20  F.3d 1163, 1173 (9th Cir. 2013); Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d

21  952, 971 (N.D. Cal. 2010); In re Menjivar, 2014 WL 308912, at *8 (B.A.P. 9th Cir. Jan. 28,

22  2014).  Similarly, courts have refused to allow borrowers the benefit of the discovery rule

23  where, as here, the alleged fraud was contained on the face of the loan documents, and there

24  were no allegations of any misrepresentations made to the borrower.  See Hubbard v. Fid.

25  Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996); Perez v. Am. Home Mortgage Servicing, Inc.,

26  No. C 12-00932 WHA, 2012 WL 1413300, at *4 (N.D. Cal. Apr. 23, 2012).  Accordingly,

27  the Bankruptcy Court applied the proper three year statute of limitations in concluding that

28  Koebel's claims were time-barred.

1

**D.**     **Motion for Reconsideration and Leave to Amend**

2        Leave to amend is properly denied where "it is clear that granting leave to amend

3 would have been futile." Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d

4 1053, 1061 (9th Cir. 2004). Having correctly concluded that the claims in the adversary

5 proceeding were barred by res judicata and the statute of limitations, the Bankruptcy Court

6 did not abuse its discretion in denying leave to amend because any further amendment

7 would have been futile.

8        Similarly, the Bankruptcy Court did not abuse its discretion in denying the motion for

9 reconsideration. A motion to reconsider "may not be used to raise arguments or present

10 evidence for the first time when they reasonably could have been raised earlier in the

11 litigation." Carroll, 342 F.3d at 945. As discussed above, Koebel's motion for

12 reconsideration was based on evidence which could have been discovered earlier, and was

13 insufficient to cure his pleading defects. Accordingly, the Bankruptcy Court did not abuse

14 its discretion in denying the motion for reconsideration.

15 **Conclusion**

16        For all of the foregoing reasons, the Court affirms the Bankruptcy Court's dismissal

17 of Koebel's Complaint and First Amended Complaint, without leave to amend, and its

18 subsequent denial of the Motion for Reconsideration.

19 DATED: January 27, 2016

20 _____

21                 Percy Anderson
          UNITED STATES DISTRICT JUDGE

22

23 cc: **Bankruptcy Court**

24

25

26

27

28

-13-